**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000403
23-AUG-2016
08:09 AM**

NO. CAAP-15-0000403

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
BRANDON VACCHELLI, Defendant-Appellant, and
JOSHUA VACCHELLI, Defendant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 13-1-0745)


MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

Defendant-Appellant Brandon Vacchelli (**Brandon**) appeals from the "Judgment of Conviction and Sentence" entered on April 27, 2015 in the Circuit Court of the First Circuit[1] (**circuit court**).

On appeal, Brandon contends the circuit court erred in: (1) allowing in prejudicial evidence; (2) denying Brandon's motion for acquittal; (3) giving a jury instruction on accomplice liability; (4) failing to instruct the jury on self-defense and defense of others; (5) answering incorrectly a jury question regarding accomplice liability; and (6) sentencing Brandon to five years incarceration.

## I. BACKGROUND

On May 12, 2013, Jessica Layco (**Layco**) and her boyfriend Tai Tang "Randy" Thai (**Thai**) were driving to their home in Makakilo with their two daughters after dinner.  Going up

---

[1] The Honorable Dean E. Ochiai presided.

Makakilo Drive, Layco noticed two cars tailgating their car. One of the cars sped up and cut in front of Layco and Thai's car. On the side of the residential street where Layco and Thai live, the two cars that had been tailgating them, had parked. Layco and Thai pulled over in front of them near the driveway of their home.

Layco and Thai exited the car telling their daughters to stay in the car. Layco and Thai approached the two cars, whose drivers had also exited their cars. The two drivers were brothers, Joshua Vacchelli (**Joshua**) and Brandon. Layco confronted the brothers, asking, "What is your guys' problem revving [your engines and] going up tailgating behind us so close like that?" Thai and Joshua began "exchanging words" and were "about to fight."

As Joshua and Thai began to physically fight, Brandon was behind Layco, who put his hands on her to hold her down. Layco told Thai, "Enough already. Get off him already. Enough. We're done already. It's done with." Following her comments, Brandon let Layco go and Joshua "backhanded" Layco on the side of her face.

After checking on her daughters' safety, Layco felt someone grab her hand and say, "Sister, calm down. I'm a police officer." The person who approached Layco was an off-duty reserve police officer named Michael Cho (**Cho**). Cho saw the fight happening and pulled over to intervene. Layco saw Cho walk over to the three men fighting, and then saw Joshua hit Cho across the head. Cho fell to his hands and knees, and Joshua began hitting Cho on his back and Brandon began kicking Cho on the right side of Cho's face.

Cho was taken to the hospital, where a doctor diagnosed him with hemorrhagic contusion, in other words, a bruise and bleeding in the brain.

On May 23, 2013, Plaintiff-Appellee State of Hawai'i (**State**) charged Joshua with assault in the second degree for actions against Cho, assault in the third degree for actions against Thai, and assault in the third degree for actions against

2

Layco.  The State charged Brandon with assault in the second degree for his actions against Cho.

On July 22, 2014, Joshua pled no contest to the charges against him.  Joshua was sentenced to five years probation for the assault in the second degree charge, and one year for each assault in the third degree charge.

Brandon's trial began on January 21, 2015.  The jury returned a guilty verdict on January 23, 2015.

At the sentencing hearing, the circuit court announced its intention to sentence Brandon to a term of imprisonment of five years.  The circuit court entered the Judgment of Conviction and Sentence on April 27, 2015.

Brandon filed his notice of appeal on May 12, 2015.

## II.  STANDARD OF REVIEW

### A.  Evidentiary Rulings and Identification Testimony

> "We apply two different standards of review in addressing evidentiary issues." State v. Richie, 88 Hawai'i 19, 36, 960 P.2d 1227, 1244 (1998).  "Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." State v. Loa, 83 Hawai'i 335, 349, 926 P.2d 1258, 1271 [(1996).]

State v. Ortiz, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999).

> When the defendant challenges admissibility of eyewitness identification on the grounds of impermissibly suggestive pre-trial identification procedure, he or she has the burden of proof, and the court, trial or appellate, is faced with two questions: (1) whether the procedure was impermissibly or unnecessarily suggestive; and (2) if so, whether, upon viewing the totality of the circumstances, such as opportunity to view at the time of the crime, the degree of attention, and the elapsed time, the witness's identification is deemed sufficiently reliable so that it is worthy of presentation to and consideration by the jury.

State v. Walton, 133 Hawai'i 66, 83, 324 P.3d 876, 893 (2014) (quoting State v. Araki, 82 Hawai'i 474, 484, 923 P.2d 891, 901 (1996)).

### B.  Motion for Judgment of Acquittal

> The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. State v. Keawe, 107 Hawai'i 1, 4, 108 P.3d 304, 307 (2005).  This court employs the same

3

> standard of review in reviewing a motion for a judgment of acquittal. Id.

Walton, 133 Hawai'i at 83, 324 P.3d at 893 (brackets omitted).

**C.   Jury Instructions and Response to Jury Communications**

> It is the circuit court's duty and ultimate responsibility to ensure that the jury was properly instructed on issues of criminal liability. State v. Kikuta, 125 Hawai'i 78, 90, 253 P.3d 639, 651 (2011). "When jury instructions, or the omission thereof, are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." Kobashigawa v. Silva, 129 Hawai'i 313, 320, 300 P.3d 579, 586 (2013).

Walton, 133 Hawai'i at 83, 324 P.3d at 893. "The circuit court's response to a jury communication is the functional equivalent of an instruction." State v. Haili, 103 Hawai'i 89, 101, 79 P.3d 1263, 1275 (2003) (brackets omitted) (quoting State v. Uyesugi, 100 Hawai'i 442, 458, 60 P.3d 843, 859 (2002)).

**D..   Sentencing**

> [A] sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions. And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment to the litigant.

State v. Henley, 136 Hawai'i 471, 478, 363 P.3d 319, 326 (2015) (quoting State v. Kong, 131 Hawai'i 94, 101, 315 P.3d 720, 727 (2013)).

### III.   DISCUSSION

**A.   Admission of Evidence**

Brandon contends the circuit court erred in admitting "the mug shot in a photographic line up of [Brandon]," and a police form "which contained prejudicial written statements from Layco[.]" Brandon sought to exclude these items in a motion in limine filed before trial. At trial, the circuit court admitted the State's Exhibit 13, which was a document with six black and white photographs in two rows of three, with handwritten

4

indication marks on the photograph numbered "3." The circuit court also admitted the State's Exhibit 12, which was a statement signed by Layco indicating that she selected "photograph number 3," and that the person she selected "punche[d] the police officer and caused the police officer to fall to the ground & he also punched my boyfriend & backhanded me on the right side of my face."

Brandon argues that because he was not charged with assault of Layco or Thai, the admission of Layco's statement was an admission of "other acts of misconduct or crimes" prohibited by Hawaii Rules of Evidence (**HRE**) Rule 404(b) (Supp. 2015).[2] We reject Brandon's argument because the photographic lineup was not introduced "to prove the character" of Brandon or "to show action in conformity therewith." Instead, the photographic lineup was introduced to show that Layco identified Brandon as a perpetrator to the police two days after the altercation.

Brandon additionally argues that the photographic lineup should have included Joshua because there were misdemeanor assault charges against Joshua for assaulting Layco and Thai. Brandon concludes that "[t]his could prejudicially have mislead the jury into believing [Layco] properly identified [Brandon] as the assailant for all three assaults." Brandon also argues that "[t]hese Exhibits were extremely prejudicial as they cast [Brandon] in the light of a suspect and should not have been allowed as they were unduly suggestive."

This court has used a three-part test to determine whether the admission of police photographs at trial was proper:

> 1. The Government must have a demonstrable need to introduce the photographs; and
>
> 2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and

---

[2] HRE Rule 404(b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as . . . identity[.]

5

> 3.  The manner and introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

State v. Kurtzen, 1 Haw. App. 406, 412-13, 620 P.2d 258, 262-63 (1980) (citing U.S. v. Fosher, 568 F.2d 207, 214 (1st Cir. 1978)); see also State v. Yamada, 116 Hawai'i 422, 439-41, 173 P.3d 569, 586-88 (App. 2007).

First, the State argues that the lineup was necessary to connect Brandon to Cho's injuries because Brandon denied that he caused Cho's injuries.  Brandon does not dispute this point. Layco, who was a witness to the event, identified Brandon two days after the altercation as the person who "punche[d] the police officer and caused the police officer to fall to the ground . . . ."  The State had a demonstrable need to introduce Layco's identification of Brandon through the photographs in order to establish that Brandon's actions were the cause of Cho's injuries.  See State v. Reiger, 64 Haw. 510, 512, 644 P.2d 959, 962 (1982) ("The photographs were the photographic lineup or array shown to the victim in the hospital after the attack.  In this case, the defense was alibi.  The question of identification was, therefore, crucial to the proof of the prosecution's case and obviously, proof that the victim had picked the appellant out of a photographic display at an early point was relevant and necessary to the government's case.").

Second, the photograph was a black and white copy of six pictures in two rows of three, numbered one through six, and titled "Photo Lineup Sheet."  There is no indication on the document that any of the persons in the photographs on the lineup had criminal records.  See Yamada, 116 Hawai'i at 441, 173 P.3d at 588 (holding that a photographic array in black and white of photographs in two rows of three titled "HONOLULU POLICE" did not violate the second prong of the Kutzen test where there were no internal police markings or mug shot identification numbers). Layco's statement indicated that the person she identified as Brandon had also hit her and her boyfriend Thai, but did not suggest that Brandon had a prior criminal record.

6

Third, the manner in which Exhibits 12 and 13 were introduced at trial did not draw any particular attention to the source of the photos as "mug shots." The exhibits were introduced as part of the State's direct examination of Layco. After describing the incident, the State asked Layco if she helped the Honolulu Police Department to identify the individuals involved in the altercation. Layco testified in response that the police came to her house two days after the altercation and showed her a lineup. The jury was not presented any evidence or testimony as to the source of the photographs.

Exhibits 12 and 13 meet the three prongs of the <u>Kutzen</u> test, and we hold that the admission of these exhibits was not erroneous. Brandon's additional argument that the exhibits were prejudicial because Layco identified Brandon as the perpetrator of the assault against Layco and Thai even though Brandon's brother was charged with those assault crimes is without merit. Brandon's misidentification goes to Layco's credibility rather than the admissibility of those exhibits.

**B.    Motion for Judgment of Acquittal**

 **i.    Causation**

Brandon next argues that the circuit court should have granted his motion for judgment of acquittal because "[t]here was insufficient evidence that [Brandon] was the one who struck [Cho] causing the contusion concussion."

At trial, Layco testified for the prosecution that she heard Cho tell Joshua, Brandon, and Thai, "I'm a police officer." Layco testified that after Cho announced himself, "Joshua hit [Cho] across the head. When that happened, [Cho] went down on his knees on all fours, and Joshua was hitting the cop behind his back and [Brandon] was kicking him on the right side of the face." Layco testified that she witnessed the event from a "couple of feet" away.

Thai's testimony supported the testimony given by Layco. Thai testified that during the altercation, he saw Brandon punching Cho in the face while the "guy in the red Civic was kicking him," referring to Joshua.

7

Finally, Cho testified for the prosecution that he could not remember who had caused his injuries. Cho testified, "I was false cracked and, um, I was blind sided. And it was such an intense hit that it was like a flash of light and intense pain. And the next thing I know is I'm kinda on all fours on the ground." Cho did not see the person who hit him. The punch that sent Cho to the ground was to the right side of his face on his cheekbone. Cho remembers one more strike before he blacked out.

For the defense, Justin Sakahara (**Sakahara**), a witness present at the scene and co-worker of Joshua, testified that he only witnessed Brandon trying to get Joshua off the person Joshua was fighting with.

Joshua testified that he did not recall "a tall Asian man who said he was a police officer[,]" but that it was possible that Joshua could have injured the police officer. Joshua testified that he pled no contest to charges involving injuries to Layco, Thai, and Cho. Joshua's testimony suggested that it was his actions, and not Brandon's, that caused injury to Cho.

Brandon testified for his own defense that during the altercation, he saw Cho laying on the ground but did not cause Cho to lay on the ground, and did not know how Cho came to be on the ground. Brandon said he did not get physically involved in the fight, but stepped between Layco and Joshua to "put distance between the two of them." Brandon testified that he did not assault Cho, did not kick him in the head, and did not punch him in the head.

Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence to support the conclusion that Brandon hit Cho in the side of his face, causing injury to Cho. The circuit court did not err in denying Brandon's motion for judgment of acquittal because "a reasonable mind might fairly conclude" that Brandon was the cause of Cho's injuries and therefore guilty under Hawaii Revised Statutes (**HRS**) § 707-711(1)(b) (2014 Repl.). See Walton, 133 Hawai'i at 83, 324 P.3d at 893 (citing Keawe, 107 Hawai'i at 4, 108 P.3d at 307).

### ii. Substantial Injury

Brandon also argues that he was entitled to a judgment of acquittal because "[t]here was no opinion testimony by [Daniel Donovan, M.D. (**Dr. Donovan**)] that to a reasonable medical probability, [Cho] suffered a substantial injury."

Brandon seems to be referring to the rule applied in civil cases that "medical opinions must be based on reasonable medical probability." State v. DeLeon, 131 Hawai'i 463, 482, 319 P.3d 382, 401 (2014). Brandon has cited no authority applying this rule to medical testimony in criminal cases. Brandon does not seem to challenge the admissibility of the expert testimony of Dr. Donovan. Therefore, we address only whether "a reasonable mind might fairly conclude guilt beyond a reasonable doubt" based on the testimony provided at trial. Walton, 133 Hawai'i at 83, 324 P.3d at 893 (quoting Keawe, 107 Hawai'i at 4, 108 P.3d at 307).

Brandon was convicted of assault in the second degree under HRS § 707-711(1)(b), which makes it a crime to "recklessly [cause] serious or substantial bodily injury to another[.]" "Substantial bodily injury" under HRS chapter 707 includes "[a] serious concussion." HRS § 707-700 (2014 Repl.).

Dr. Donovan testified at trial that following the altercation he examined Cho in the Neuroscience Intensive Care Unit at the Queen's Medical Center. Upon examination, Dr. Donovan found that Cho had a hemorrhagic contusion, or in other words, "a bruise and bleeding in the brain itself in the left frontal lobe." Dr. Donovan described the hemorrhagic contusion as "a severe traumatic brain injury."

Dr. Donovan testified that Cho also had a concussion, which he defined as "a temporary alteration or change in mental function due to a traumatic injury." Dr. Donovan testified that the medical community avoids classifying concussions by level of severity because "all [concussions] need to be taken seriously," but will classify varying levels of severity for traumatic brain injury. Dr. Donovan added that experts in the field tend to

prefer the term "traumatic brain injury" over "concussion" because it is more specific.

Based on Dr. Donovan's testimony, a reasonable mind could conclude that Cho suffered "a serious concussion" within the meaning of HRS § 707-700 such that liability would ensue under HRS § 707-711(1)(b). The circuit court did not err in denying Brandon's motion for judgment of acquittal on this basis.

**C.    Jury Instruction on Accomplice Liability**

Brandon argues that the circuit court erred in instructing the jury on accomplice liability. Brandon seems to argue that the facts of this case do not support an accomplice instruction.

Accomplice liability is provided for in HRS § 702-221 (2014 Repl.), and states in relevant part:

> §702-221 **Liability for conduct of another.** (1) A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.
>
> (2)    A person is legally accountable for the conduct of another person when:
>
> . . . .
>
> (c)    He is an accomplice of such other person in the commission of the offense.

HRS § 702-222 (2014 Repl.) defines an accomplice:

> §702-222 **Liability for conduct of another; complicity.** A person is an accomplice of another person in the commission of an offense if:
>
> (1)    With the intention of promoting or facilitating the commission of the offense, the person:
>
> (a)    Solicits the other person to commit it;
>
> (b)    Aids or agrees or attempts to aid the other person in planning or committing it[.]

At the close of evidence, the circuit court instructed the jury:

> A person charged with committing an offense may be guilty because he is an accomplice of another person in the commission of the offense. The prosecution must prove accomplice liability beyond a reasonable doubt. A person is an accomplice of another in the commission of an offense if:
>
> 1.    With the intent to promote or facilitate the commission of the offense, he, A, solicits the other person

10

to commit it; or, B, aids or agrees or attempts to aid the other person in the planning or commission of the offense.

Mere presence at the scene of an offense or knowledge that an offense is being committed without more does not make a person an accomplice to the offense. However, if a person plans or participates in the commission of an offense with the intent to promote or facilitate the offense, he is an accomplice to the commission of the offense.

On appeal, Brandon does not challenge the accuracy of the circuit court's instruction to the jury on accomplice liability. Rather, Brandon argues that the jury should not have been instructed on accomplice liability at all.

Brandon argues that State v. Apao, 59 Haw. 625, 586 P.2d 250 (1978) should not control because "[t]here is no such evidence in the instant case that [Brandon] and his brother planned to assault [Cho]." In Apao, the defendant argued that an instruction on accomplice liability was reversible error because the indictment did not specify whether he was going to be charged as a principal or accomplice. Id. at 644, 586 P.2d at 262. The Hawai'i Supreme Court disagreed, noting that where a defendant is charged as a principal, it is not error for the court to instruct the jury on accomplice liability. Id. at 646, 586 P.2d at 263. Brandon's attempt to distinguish Apao is without merit. Like the defendant in Apao, Brandon could be convicted as an accomplice even though the felony information charged him as a principal.

Brandon cites State v. Soares, 72 Haw. 278, 815 P.2d 428 (1991) to argue that an accomplice liability instruction is error where one defendant is charged separately from another defendant. Brandon misstates the rule from Soares. The supreme court held in Soares that where "each defendant is charged separately and each charge involves different facts with different victims, an accomplice instruction should not have been given." Id. at 281, 815 P.2d at 430. Unlike the crimes involved in Soares, the charges against Joshua and the charges against Brandon involved the same set of facts and the same victims. Brandon's argument that the jury instruction on accomplice liability was erroneous under Soares is without merit.

Brandon argues that even if the circuit court's instruction on accomplice liability was proper, the circuit court erred in responding to the jury's question about accomplice liability. The jury submitted "Communication No. 2 From the Jury," which read:

> Question regarding acts that constitute an "accomplice."
>
> Is someone an accomplice by not stopping a fight?
>
> Is someone an accomplice by encouraging the fleeing of a scene after an incident?

The circuit court answered the jury by stating, "You have received all admitted evidence."

Brandon cites State v. Estrada, 69 Haw. 204, 738 P.2d 812 (1987) and State v. Miyashiro, 90 Hawai'i 489, 979 P.2d 85 (1999) as examples of improperly answered jury questions. Estrada involved the decision by the trial court to read only one witness's testimony where the jury requested the rereading of two witnesses' testimony. Estrada, 69 Haw. at 228-29, 738 P.2d at 828-29. Miyashiro involved a trial court's answer to the jury that

> may have implied to the jurors that if they failed to reach [a unanimous] agreement as to the affirmative defense of entrapment, they were required to return a guilty verdict, even if they had not unanimously determined whether the prosecution had established all the elements of the charged offenses beyond a reasonable doubt.

Miyashiro, 90 Hawai'i at 500, 979 P.2d at 96. Neither of these cases helps us to evaluate whether the circuit court's answer to the jury's communication was erroneous.

In a jury trial, the trial court is prohibited from commenting upon the evidence. HRE Rule 1102 (1993) ("The court shall instruct the jury regarding the law applicable to the facts of the case, but shall not comment upon the evidence. It shall also instruct the jury that they are the exclusive judges of all questions of fact and the credibility of witnesses."). The jury's question asked the trial court to apply the law on accomplice liability to the facts of the case, which was the role of the jury. The circuit court's decision to decline answering the jury's question was not improper or erroneous. See Walton,

133 Hawai'i at 83, 324 P.3d at 893. Brandon's argument that the circuit court improperly answered the jury's questions on accomplice liability is without merit.

## D.    Self-Defense and Defense of Others Jury Instruction

Brandon next argues that the jury should have been instructed on self-defense and defense of others. Counsel for Brandon admitted at trial that there was not enough evidence to support a self-defense or defense of others instruction. Despite this position, Brandon encourages this court to notice plain error on appeal because the omission of the jury instructions on self-defense and defense of others affects Brandon's substantial rights. See Hawai'i Rules of Penal Procedure Rule 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

Brandon relies primarily on the testimony of witness Sakahara to argue that "there was a scintilla of evidence for which . . . a self defense instruction and defense of others instruction should have been given." Sakahara was asked on cross-examination, "[W]as [Cho] able to break up the altercation?" Sakahara responded, "He ended up having Brandon in a chokehold." Brandon confirmed on cross-examination that someone had put him in a chokehold. Brandon posits that this testimony was sufficient to indicate that he was acting in self-defense to warrant a self-defense instruction.

HRS § 703-304(1) (2014 Repl.) provides, "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion."

> The test for self-defense contains both a subjective and an objective prong. Under the subjective prong the jury is required to evaluate the use of force from the defendant's perspective. The focus is on the circumstances known to the defendant, thus directing the jury to consider the actions of a reasonable person in the defendant's position under the circumstances as he believed them to be. Under the objective prong, emphasis is placed on the reasonable person standard so the defendant's use of force must be determined from the point of view of a reasonable person.

13

State v. Williams, 137 Hawai'i 230, 242, 368 P.3d 972, 984 (App. 2016) (internal citations and quotation marks omitted).

The testimony Brandon cites showing that at one point during the altercation, Cho placed Brandon in a chokehold, does not support a conclusion that Brandon was acting in self-defense. There was no testimony that Brandon subjectively believed that he was acting to protect himself or his brother. There was no testimony that would support a finding that a reasonable person in Brandon's position would have been acting to protect himself or his brother.

Reading the record as a whole, the omission of the self-defense and defense of others was not prejudicial, and it was not plain error. See Walton, 133 Hawai'i at 83, 324 P.3d at 893.

## E. Sentencing

Brandon's final argument on appeal is that the circuit court abused its discretion in sentencing him to the maximum five years incarceration for his first criminal offense.

First, Brandon contends the circuit court failed to take into account that Joshua received probation for the same offense, which was an "unwarranted sentence disparit[y]" under HRS § 706-606 (2014 Repl.).[3] Brandon takes out of context the

---

[3] HRS § 706-606 provides:

§706-606 **Factors to be considered in imposing a sentence.** The court, in determining the particular sentence to be imposed, shall consider:

    (1)    The nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    The need for the sentence imposed:

        (a)    To reflect the seriousness of the offense, to promote respect for law, and to provide the punishment for the offense;

        (b)    To afford adequate deterrence to criminal conduct;

        (c)    To protect the public from further crimes of the defendant; and

(continued...)

14

circuit court's statement, "Your client did not plead. He went to trial." Brandon suggests that this statement demonstrates that the circuit court was punishing Brandon for exercising his right to a jury trial instead of pleading guilty. In context, however, the circuit court was expressing its fuller understanding of the circumstances warranting a longer sentence for Brandon than the sentence his brother Joshua received. At the hearing, this interchange took place:

> [Counsel for Brandon]: Your Honor, if I may? Is this court willing to consider the disparity sentence between his brother [Joshua] that was imposed?
>
> THE COURT: I have considered it. [Joshua] pled and got four years probation with one year of incarceration. Your client did not plead. He went to trial. I heard the entire trial, and I understand the full impact of this case upon everyone involved.

Furthermore, "there is no constitutional requirement that the court impose uniform sentences on multiple defendants involved in the same criminal activity, and a disparity among sentences does not establish that any particular defendant's sentence is excessive." State v. Teves, 4 Haw. App. 566, 572, 670 P.2d 834, 838 (1983) (citing State v. Seifart, 597 P.2d 44, 47 (Idaho 1979)). Brandon's argument that his sentence should have been reduced because of the disparity between Brandon's sentence and his brother Joshua's sentence is without merit.

Second, Brandon appears to suggest that the circuit court gave him the maximum sentence because he used brass knuckles to commit the offense. Brandon takes issue with the circuit court's statement, as Brandon recounts, that "hitting a person [with] brass knuckles [while] he was down is an act of

---

³(...continued)

    (d)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    The kinds of sentences available; and

    (4)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

cowardice." We cannot find in the transcript of the sentencing hearing where the circuit court made this statement. The only mention of brass knuckles was the circuit court's statement,

> And coupled with that cowardice were extreme acts of brutality by both you and your brother, one with the brass knuckles which, in itself, is illegal; and, two, hitting a man when he's down shows no sense of mercy or any effort to break off the attack because, clearly, [Cho] was incapacitated from the very first blow, and he didn't have a fair chance to defend himself that night. So while we're here and you may be remorseful now, your remorse and mercy was nonexistent on the day in which [Cho] happened upon you and your brother.

At the sentencing hearing, Cho told the circuit court that he had been punched in the head by Joshua, who was wearing brass knuckles. The circuit court's statement recognizes that Joshua hit Cho with brass knuckles, not Brandon. Brandon's argument on this point is mistaken and without merit.

### IV. CONCLUSION

Therefore, the "Judgment of Conviction and Sentence" entered on April 27, 2015 in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, August 23, 2016.

On the briefs:

Daphne E. Barbee
for Defendant-Appellant.

Brandon H. Ito
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge